New York County.—HON. D. C. CALVIN, Surrogate.— February, 1880.

## Florence *v.* Sands.

*In the matter of the final accounting of the executors of* Elizabeth Sands, *deceased.*

The testatrix, after bequeathing certain general and specific legacies, directed the payment of $50 per month to F. during life, &c., "out of the rents and income of her estate," and further directed the executors to keep down the interest on the mortgage on her real estate, and to pay all taxes, assessments and repairs. The personal estate was not sufficient to satisfy the general legacies in full.

*Held,* 1. That the legacy to F. was a demonstrative legacy, and should be paid out of the particular fund, in preference to general legacies.

2. That if the particular fund is inadequate to satisfy the demonstrative legacy in full, the demonstrative legatee is, as to the unpaid balance of his legacy, a general legatee, and his legacy is subject to abatement with the other general legacies.

3. That by "rents and income," the testator meant the net rents, &c., after payment of interest on mortgage incumbrances, the taxes, assessments and repairs.

THIS was a hearing on exceptions to an auditor's report on a final accounting.

It appeared that by her will the decedent, Elizabeth Sands, bequeathed her stock of goods to one McLoughlin, he to pay the debts of her business, and directed her executor to rent to him her store, with a back room and bedroom, for $800 per annum, so long as he should live, and also to give to him her horse, harness, &c., and to pay to him, monthly, $25, so long as the horse should live, for his care and keep. She also directed them to pay two clerks $100 each, as presents, and to pay to her brother, William Florence, out of her rents or income, $50 per month for life, and to his widow surviving him $20 per month, she remaining his widow; and further directed them to pay Miss Swift, for her care, $200. She gave to Dr. Burke his choice of three lots of ground, and the other two lots she gave to a niece, Miss Disbrow.

By the seventh clause, she directed her executors to pay the interest on a mortgage on her real estate in this city, together with taxes and assessments, and keep the premises in repair. The balance of rent and income of her estate she directed should be deposited in a savings bank, to be used for the payment of the principal of said mortgage, and the balance, after the payment of expenses on her property, she directed should be paid annually to Mrs. Disbrow. The residue of her estate, after the death of William Florence, she gave to Miss Disbrow.

By a codicil she gave certain specific property to different legatees.

JOHN H. HARNETT, *for the executors.*

ARTHUR T. HOFFMAN, *for the exceptors.*

THE SURROGATE.—From the account and the testimony taken before the auditor, it appears that there was not sufficient personal estate, after the sale of the stock of goods, &c., to pay all of the legacies in full, but that there was considerable rent realized from the store and the apartments above. The executors, out of the personal property and the rents, paid the general legacies, the monthly allowance for the keep of the horse, and the balance they applied towards the monthly allowance to Florence, having, however, a considerable arrear unpaid, in consequence of the executors having paid the interest upon the mortgage mentioned, together with taxes, insurance and repairs.

The principal point raised by the exceptions to the auditor's report, filed by Florence, is whether he was entitled, under the will, to full payment of his monthly allowance, in preference to the payment of interest, taxes, insurance and repairs aforesaid, and in preference also to the other legacies, out of the rents or income.

It is not only a fair presumption, but a necessary inference from the will itself, that the testatrix, when she executed the will, supposed she had sufficient personal property, over and above the specific legacy to McLoughflin and others, of the stock of goods, and other specific articles, to pay the legacies to her two clerks, to Miss Swift, and to pay McLoughflin the $25 per month for the keep of the horse "Phil" ; and that the rents or income of her estate would be sufficient to pay the monthly sum to William Florence, after the payment of the interest on the mortgage, taxes, insurance and repairs. It cannot be reasonably supposed that she contemplated such payment out of the gross rents, &c., for the reason that

a failure to pay the interest on the mortgage, the taxes, insurance and repairs, would result in a sale of the property, and a loss of all rents.

I conclude, therefore, that the legacy to William Florence is of the nature of a demonstrative legacy, to be paid out of the income of the estate, *after* the payment of interest on the mortgage, the taxes, insurance and repairs on the property, out of which rent was receivable, and the income of any property affording income ; and that as to such balance of rent and income, Florence has a preference.

This conclusion is strengthened by the fact that the executors are not vested with power to sell the real estate.

Williams, in his treatise on *Executors* (4 Am. ed., vol. 2, p. 994), says that " A legacy of quantity is ordinarily a general legacy, but there are legacies of quantity in the nature of specific legacies, as of so much money, with reference to a particular fund for payment. This kind of legacy is called by the civilians a demonstrative legacy, and it is so far general, and differs so much in effect from one properly specific, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets. Yet the legacy is so far specific that it will not be liable to abate with general legacies upon a deficiency of assets :" also, at page 1004, that " general legacies do not become specific because they are charged upon, or payable out of, the proceeds of real estate."

" The *onus probandi* is upon the party seeking priority, and proof must be clear and conclusive that the testator so intended, because, in the absence of such proof the

testator must be deemed to have considered his estate sufficient to pay all."

*Redfield on Wills* (vol. 2, p. 142, 3 ed.), on the authority of Sellon *v.* Watts (7 *Jur. N. S. Dig.*, 134; 9 *Weekly Rep.*, 847) and Mullins *v.* Smith (1 *Drew. & Sm.* 204), says: "that a demonstrative legacy has the prior right to the fund, out of which it is directed to be paid, as against all other claims, except those of creditors. If that is so, and it seems to be the present inclination of the English courts, demonstrative legacies have all the advantage of specific legacies, in regard to the fund upon which they are charged, and are exempt from the disadvantage attending specific legacies, that if the fund fails, either wholly or in part, it results to that extent in defeating the bequest. For if the fund for a demonstrative legacy fails, the legatee may go against the general estate for the unpaid balance."

The result of these authorities is that it was the duty of the executors to pay the net rent and income to Florence, and that there was no authority to pay any portion thereof to the other legatees; but that, as to any balance unpaid to him out of the particular fund, he is a general legatee, and his legacy must abate with the other general legacies.

The sum directed to be paid for the keep of the horse "Phil," from the nature of the case, would seem to be a preferred legacy, to be first paid out of the personalty, and it appearing that there was sufficient for that purpose, I am of the opinion that the executors should receive credit for the full amount so paid, and that the income and rent should be awarded to Florence, upon the balance of the estate, and that it was the duty of the

.executors to have protected themselves against any over payment to the general legatees by security.

Ordered accordingly.